STATE OF IOWA, Appellee, v. TUNIS H. KLEIN, Appellant.

No. 42481.

OCTOBER 23, 1934.

McCoy & McCoy, H. E. DeReus, and H. F. Wagner, for appellant.

Edward L. O'Connor, Attorney-general, and Walter F. Maley, Assistant Attorney-general, for appellee.

EVANS, J.—The defendant was a director of the Security State Bank of Pella, Iowa, for some years prior to December 31, 1930. On or about January 3, 1931, said bank was called upon for a report by the banking department of the state for December 31, 1930. Responsive to such call such report was made by the executive officials and presented to the defendant for his attestation. He attested the same. The call of the banking department for the report was itemized and the resulting report purported to respond to such items by writing into the blank spaces prepared by the banking department the appropriate figures for such blank. Such itemized report was as follows:

"1. Loans and Discounts ............................................$  974,918.38

2. Cash in Vault ............................................................  23,550.76

3. Exchanges and clearing house, also checks on banks in same place ............................................. 13,843.02
4. Total resources ...................................................... 1,137,660.76
5. Individual deposits subject to check ......................... 558,895.56
6. Total liabilities ...................................................... 1,137,660.76
7. Amount of liabilities owing by directors as borrowers, $51,500.00; as endorsers, $18,730.00; Total ...................................................................... 70,230.00."

At the close of the evidence for the state, the court withdrew from the consideration of the jury all the foregoing items except the last, on the ground that there was no evidence of the falsity of any of them. The court submitted to the jury the question whether the last item was false in its statement of the liabilities *owing by directors.* It will be noted that this item called for the amount of all liabilities owing by directors: *"as borrowers* ————; *as endorsers* ————." The report showed a sum total of $51,500 owing by the directors *as borrowers* and $18,730 *as endorsers.* The claim on the part of the state is that the item of $51,500 should have stated the item as the sum of $91,500. The items making up the sum total of $51,500 consisted of the following:

"a. J. P. Klein .............................................................$ 4,500.00
 b. Wm. Van der Voort .............................................. 4,000.00
 c. A. T. Klein ........................................................... 4,500.00
 d. S. B. Baron .......................................................... 3,500.00
 e. H. P. Van Gorp .................................................... 15,000.00
 f. J. H. Van Vliet ..................................................... 10,000.00
 g. Tunis H. Klein ...................................................... None
 h. P. H. Van Gorp Trust Estate ............................... 10,000.00

        Total.........................................................$51,500.00."

There is no dispute as to the correctness of the foregoing items. The claim of the state is that two other items of $20,000 each should have been added to the sum total. Van Vliet was the cashier of the bank and a director. Tunis Klein was a teller and part time checker. The bank had bills payable outstanding. The contention for the defendant is that the two items of $20,000 each consisted of two accommodation notes executed by Van Vliet and this defendant severally, and delivered to the bank. It appears that on the eve-

ning of December 31, 1930, after banking hours, each of them signed such a note and entered the same upon a deposit slip, which passed ultimately into the hands of the bookkeeper. Van Vliet was owing the bank at that time $10,000; Tunis Klein was owing it nothing. The item was noted in each case on the deposit slip in these words and figures: "Note, $20,000". The deposit slips came into the hands of the bookkeeper in due course on January 2, and were posted. They were posted in the ledger in the same manner as any ordinary note would be. The explanation of this method of posting, as given by the bookkeeper, was that this was their usual method of keeping record of accommodation notes. The notes themselves were marked as *accommodation* notes.

On this question the state called two witnesses, Helen Neyenesth and Hattie Gezel. Miss Neyenesth was formerly the bookkeeper of the bank and Miss Gezel was assistant cashier and checker. Each witness testified in substance that each note was an accommodation note and that they so understood it; that both were marked as accommodation notes. If the evidence of these two witnesses is to be accepted as true, then the defendant was entitled to an acquittal under the instructions of the court. The court laid the case before the jury very succinctly and clearly in instruction No. 7, as follows:

"7. Under the indictment in this case in order to justify a conviction it is incumbent upon the state to establish beyond a reasonable doubt that the statement Exhibit 14 is false, in that it states the total liabilities of the directors to the bank on December 31st, 1930, as less than such liability in fact was. The burden is upon the state to establish by the evidence beyond a reasonable doubt that the legal liability of the individual directors to the bank, that is such liability as could have been collected by the bank by legal process, exceeded the amount stated in Exhibit 14. It is the contention of the defendant that the two notes one of Tunis H. Klein for $20,000.00, and one of J. H. Van Vliet for $20,000.00, were each accommodation notes, given for the accommodation of the bank, and that they were under no legal liability to the bank thereon.

"An accommodation note, briefly stated, is a note given for accommodation, without consideration, and if such notes or either of them were in fact accommodation notes, then such note or notes did not constitute a legal liability on the part of the maker to the bank, so long as such note was held by the bank. The mere fact

that credit was given on the books of the bank to the maker of said notes would not create a legal liability on the part of the makers, if in fact the credit was not subject to withdrawal, that is not subject to check; therefore if said notes were made and credit given for the amount thereof but such credit was not subject to check and was not in fact withdrawn, then said notes were accommodation notes, could not have been collected by the bank, and did not constitute a legal .liability on the part of the makers and it was not necessary to include such notes as a part of the liability of directors on said Exhibit 14."

Notwithstanding the testimony of its own witnesses, the state contends for a conviction. It has no evidence in support of its position except the method of the bookkeeper. The state suggests that its witnesses were hostile. If that were so, it would not avail the state as affirmative evidence of guilt. We think the accusation is not warranted by the record. Their testimony is entirely consistent with the case. If Van Vliet and the defendant executed these notes as borrowers, money or debt must have figured in the transaction somewhere. There is no pretense of evidence that any money passed, or that either of the alleged borrowers ever checked a dollar on the credit thus obtained. The later history of the notes is not disclosed in the record other than that they were discharged or canceled within a few days. The state construes the books as showing *payment*. That, however, is a mere inference from the *debit* and *credit* items on the books. There is no pretense of evidence that the bank received a dollar of money or credit in the making of such payment or any pretense of evidence that the makers of the notes received a dollar therefrom. We are constrained to the view beyond reasonable doubt that the notes in question were accommodation notes as defined by the court in the seventh instruction. As such, they were subject to withdrawal at any time before they had been hypothecated. The bank continued as a going concern until October, 1931, when it went into the hands of the receiver. This indictment was returned in October, 1932. The bank records have been in control of the receiver ever since October, 1931, and were available to the state at all times as evidence of its financial transactions. No evidence was offered that these notes ever figured as assets in the resources of the bank except the temporary debit and credit entries; nor, on the other hand, does it appear that the bank hypothecated

them or used them in any way. The bookkeeping simply shows a *debit* of "Note $20,000", and, a few days later, a *credit* of the same amount. It might have been better bookkeeping to have entered a *credit* of $20,000 in the first instance and a *debit* of the same amount in the event that the note was not used. But the particular method of the bookkeeping is not controlling. The net result was the same by either method. The material inquiry is, Did this defendant owe the bank $20,000? The evidence is uncontradicted to the contrary. He was not a debtor to the bank at all. Van Vliet was a debtor for $10,000, but that was represented by another note and was duly reported. If the defendant had withdrawn the note after it had been *debited* to him upon the books, he was, of course, entitled to a *credit* on the same books. If on the other hand the note had been *credited* upon the books to the defendant as an accommodation note, then, in the event of its withdrawal, the item should be *debited* to him. We find nothing in the record that would justify the rejection of the testimony of the bookkeeper.

It is strongly urged by the state that the verdict of the jury is conclusive upon us and that our interference therein is not warranted by the record. We cannot assent to this contention. We have held repeatedly that we will interfere with a fact finding of the jury in a criminal case more readily than in a civil one. We have held uniformly that we will not support a verdict, which is against the clear weight of the evidence. This is the true rule in every case whether civil or criminal. Perhaps we have solved doubts somewhat more punctiliously in criminal than in civil cases. See State v. Reinheimer, 109 Iowa 624, 80 N. W. 669; State v. Saling, 177 Iowa 552, 159 N. W. 255; First National Bank v. Brown, 197 Iowa 1376, 199 N. W. 272; State v. Manly, 211 Iowa 1043, 233 N. W. 110. We are abidingly convinced that the verdict is against the clear weight of the evidence and against the instruction of the court. The motion for a directed verdict at the close of all the evidence should have been sustained.

The judgment below is accordingly reversed.

MITCHELL, C. J., and ALBERT, KINDIG, and DONEGAN, JJ., concur.